## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY, *et al.*,<br><br>Defendant. | Civil Action No. 22-486 (BAH)<br><br>Judge Beryl A. Howell |

## MEMORANDUM OPINION

Plaintiff Center for Biological Diversity filed this lawsuit against the U.S. Environmental Protection Agency ("EPA") and eleven other government defendants challenging EPA's failure to perform statutorily required consultations with the U.S. Fish and Wildlife Services ("FWS") and the National Marine Fisheries Service ("NMFS") (hereinafter collectively "the Services") in accordance with Section 7 of the Endangered Species Act ("ESA"), 16 U.S.C. § 1536. Defendants agree that EPA failed to complete the required Section 7 consultations before approving Washington state's limits on aquatic cyanide in 1993, 1997, and 2007, pursuant to the Clean Water Act ("CWA"), 33 U.S.C. § 1313(c)(2)(A). Nonetheless, defendants move to dismiss plaintiff's complaint, under Federal Rule of Civil Procedure 12(b)(6), arguing that plaintiff's first two claims are time-barred by the six-year statute of limitations, under 28 U.S.C. § 2401(a), and that plaintiff's other two claims fail to assert any ground for relief. For the reasons explained below, defendants' motion is denied as to all four counts.

## I.    BACKGROUND

The factual background and procedural history relevant to the pending motion are described below.

**A.      Statutory Context**

This case implicates two important environmental laws, the ESA and the Clean Water Act ("CWA"), the pertinent requirements of each are summarized.  Enacted in 1973, the ESA aimed "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved."  16 U.S.C. § 1531(b).  Since its promulgation, the Act has been coined "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation."  *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978).  "The plain intent of Congress in enacting this statute was to halt and reverse the trend toward species extinction, whatever the cost."  *Id*. at 184.  To further this end, Section 7(a)(2) of the ESA reads:

> Each Federal Agency shall . . . insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species which is determined by the Secretary, after consultation as appropriate with affected States, to be critical.

16 U.S.C. § 1536(a)(2).  If an agency action "will likely affect" endangered or threatened species and their protected habitats present in the to-be-effected area, the "action agency," or agency performing the potentially harmful action, "shall consult" with designated federal wildlife services, namely, FWS, a division within the U.S. Department of the Interior, and NMFS, a division of the U.S. Department of Commerce.  *See id.* § 1536(a)–(d); *see also id.* § 1532(15) (defining the federal wildlife services); 50 C.F.R. § 402.14(a) ("Each Federal agency shall review its actions at the earliest possible time to determine whether any action may affect listed species or critical habitat."); *Ctr. for Biological Diversity v. EPA*, 56 F.4th 55, 62 (D.C. Cir. 2022) (describing the Section 7 consultation process).  Such formal consultation results in the Services producing a "biological opinion" that assesses how the agency action would affect the relevant species and habitats.  *See* 16 U.S.C. § 1536(b); *see generally* 50 C.F.R. §

402.14(h)(1)(iv) (describing the contents of a biological opinion).  If either of the Services concludes that an action will not likely jeopardize a listed species or critical habitat, the biological opinion includes an "incidental take" statement outlining the permitted impact and defining a "prohibited taking."  *See* 16 U.S.C. § 402.14(i).  "Formal consultation is terminated with the issuance of the biological opinion."  50 C.F.R. § 402.14(m)(1).

In comparison, informal consultation may occur to determine if formal consultation is required.  *See* 50 C.F.R. § 402.13(a).  Through this process, the Services "may suggest modifications to the action that the Federal agency and any applicant could implement to avoid the likelihood of adverse effects to listed species or critical habitat."  *See id.* § 402.13(b).  Informal consultation concludes with the Services' issuance of a written concurrence "that the action is not likely to adversely affect listed species or critical habitat."  *Id.* § 402.13(c).

Consultation must be reinitiated in four circumstances:

(1)   If the amount or extent of taking specified in the incidental take statement is exceeded;

(2)   If new information reveals effects of the action that may affect listed species or critical habitat in a manner or to an extent not previously considered;

(3)   If the identified action is subsequently modified in a manner that causes an effect to the listed species or critical habitat that was not considered in the biological opinion or written concurrence; or

(4)   If a new species is listed or critical habitat designated that may be affected by the identified action.

*Id.* § 402.16(a).

The CWA serves to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. § 1251(a).  The Act mandates that states review their water quality standards every three years and report any adopted or revised standards to EPA for approval.  *See id.* § 1313(c)(1)–(2)(A).  EPA must notify the state if the standards are approved

within sixty days, at which point the state's proposed standard becomes "the water quality standard for the applicable waters of that State." *Id.* § 1313(c)(3). If the state's standards do not meet EPA's expectations, the agency must "notify the State and specify the changes to meet such requirements" within ninety days. *Id.*

### B.    Factual Background

In November 1992, the Washington State Department of Ecology ("Washington") first submitted proposed restrictions on cyanide in freshwater sources in the state. *See* Compl. ¶ 63. Cyanide is "a toxic compound released into waterways by a variety of anthropogenic activities including urban stormwater runoff, industrial and municipal discharges, deposition from air pollution, and mining." *Id.* ¶ 1; *accord id.* ¶ 57. When exposed to wildlife, namely various species of fish, cyanide can "disrupt[] their metabolism and thus their ability to harness energy" and stunt their capacity to "carry out essential life functions." *Id.* ¶ 57; *see also id.* ¶¶ 58–62 (detailing the disastrous effects of cyanide on fish); Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n") at 9–10, ECF No. 21 (describing the same).

To thwart those negative impacts, Washington established freshwater acute criterion (22.0 micrograms of cyanide per liter, or μg/L) and chronic criterion (5.2 μg/L) as well as marine acute criterion (1.0 μg/L) for cyanide—limiting the amount of cyanide permitted in freshwater in the state. *See* Compl. ¶ 63; Defs.' Mot. to Dismiss ("Defs.' Mot.") at 4, ECF No. 19. EPA approved Washington's cyanide criteria on March 18, 1993. *See* Compl. ¶ 64; Defs.' Mot. at 4. Since the state did not submit a marine chronic criterion for review, however, EPA promulgated one under the National Toxics Rule, which imposes national standards for appropriate levels of toxins in water on states that have not submitted their own criteria or had their criteria approved. *See* 57 Fed. Reg. 60,848 (Dec. 22, 1992) (codified at 40 C.F.R. pt. 131); *see* Compl. ¶ 65; Defs.' Mot. at 4. Both parties agree that EPA did not consult with either FWS or NMFS under Section

7 of the ESA regarding the approval of Washington's standards or the subsequent promulgation of a marine chronic criterion in the National Toxics Rule.  *See* Compl. ¶ 70; Defs.' Mot. at 4.

Five years later, in 1997, Washington submitted to EPA revised cyanide water quality criteria for marine waters inside the Puget Sound (2.8 μg/L acute and 9.1 μg/L chronic), which the agency approved in 1998 "conditional upon the outcome of the ESA consultations with the Services."  Compl. ¶¶ 66–67; *see also* Defs.' Mot. at 4.  The parties agree that, in 2001, EPA initiated consultation with the Services regarding the revised cyanide criteria.  *See* Compl. ¶ 71; Defs.' Mot. at 4–5.  EPA provided a draft biological assessment to the Services in July 2002 that concluded that "cyanide criteria were not likely to adversely affect ESA-listed fish and bird species, but that they may be likely to adversely affect the humpback whale, Stellar sea lion, and leatherback sea turtle."  Compl. ¶ 72.  Yet the Services did not issue a final biological opinion regarding EPA's 1998 cyanide criteria approval.  *Id.* ¶ 73; *see also* Defs.' Mot. at 4–5.

Then again, on August 1, 2003, Washington submitted a cyanide water quality criterion for marine waters outside Puget Sound (1.0 μg/L) that was identical to the one promulgated in the National Toxics Rule.  *See* Compl. ¶ 68.  On March 23, 2007, EPA initiated consultation with the Services regarding national criteria for aquatic life pursuant to Section 304(a) of the CWA.  *See id.* ¶ 74.  EPA subsequently approved Washington's criterion on May 23, 2007, similarly conditioned on the outcome of ESA Section 7 national consultation.  *See id.* ¶ 69.  Pursuant to those consultations, the Services then produced draft biological opinions, on January 15, 2010, from FWS, and April 27, 2010, from NMFS, *see id.* ¶ 78, in which both Services concluded that EPA's proposed approvals of the cyanide criteria "were likely to jeopardize the continued existence of numerous listed species native to Washington State and adversely modify their critical habitat," *id.* ¶ 79.  Then, on May 4, 2016, EPA terminated continued consultations

without a completed Section 7 consultation regarding Washington's proposed criterion.  *See id.* ¶ 84; Defs.' Mot. at 5.[1]

Relevant to Washington's cyanide criteria, plaintiff alleges that two areas have since been newly designated as critical habitat protected by the ESA and thus require reinitiated consultations.  First, on February 24, 2016, NMFS issued a final rule designating new critical habitat in waters governed by Washington's cyanide standards.  *See* Compl. ¶ 86 (citing Designation of Critical Habitat for Lower Columbia River Coho Salmon and Puget Sound Steelhead, 81 Fed. Reg. 9252 (Feb. 24, 2016) (codified at 50 C.F.R. § 226.212)).  The rule states that "EPA's approval of water quality standards is the type of activity that may affect the critical habitat and would be subject to the requirements of section 7 of the ESA."  *Id.* (citing Designation of Critical Habitat for Lower Columbia River Coho Salmon and Puget Sound Steelhead, 81 Fed. Reg. at 9273).  Similarly, on August 2, 2021, NMFS issued a final rule revising the critical habitat designation of a distinct population of the Southern Resident killer whale in water governed by Washington's cyanide standards.  *Id.* ¶ 87 (citing Revision of Critical Habitat for the Southern Resident Killer Whale Distinct Population Segment, 86 Fed.

---

[1]     Unrelated to this dispute, but of relevance to EPA's continued failure to consult regarding the impact of cyanide, a federal court in the Western District of Washington ordered EPA "to grant a rulemaking petition requesting that EPA use its federal rulemaking authority under section 303(c)(4)(B) of the CWA, 33 U.S.C. § 1313(c)(4)(B), to determine whether new or revised aquatic life criteria are necessary for nine toxic[] pollutants in Washington State, including cyanide," Defs.' Mot. at 6 (citing Order Granting Mot. to Am. & Modifying the Court's December 29, 2021 Order on Cross-Mots. for Summ. J. ("W.D. Wash. Order"), *Nw. Envtl. Advocates v. EPA*, No. 20-cv-13624 (MJP), ECF No. 84), and to complete its analysis on the need for revised criteria by June 1, 2023, *see* W.D. Wash. Order at 2.  On July 27, 2023, defendants notified the Court that, on May 25, 2023, EPA "found that new water quality criteria are required for Washington state to meet CWA requirements for 9 pollutants, including cyanide," *see* Defs.' Notice of EPA's Section 303(c)(4)(B) Determination ("Defs.' Notice") at 1, ECF No. 24 (citing EPA, Determination Letter to Washington State Dep't of Ecology (May 25, 2023), https://www.epa.gov/system/files/documents/2023-05/Signed-WA-ALC-Determination-May-2023.pdf [https://perma.cc/DR2Z-XWM2]), and that, pursuant to the CWA, EPA shall "promptly prepare and publish proposed regulations setting forth a revised or new water quality standard," *id*.  Yet, as noted by plaintiff, EPA's determination regarding the need for new water quality criteria lacks any commitment to completing consultation with the Services as required by the ESA.  *See* Pl.'s Resp. Defs.' Notice of EPA's Section 303(c)(4)(B) Determination ("Pl.'s Resp.") at 2, ECF No. 25.  Thus, EPA's public commitment to comply with the CWA and the Western District of Washington's order does not move the needle in this case.

Reg. 41,668, 41,679–80 (Aug. 2, 2021)).  The rule explains that the whale's survival depends on "abundant Chinook salmon—their preferred food source," and that such salmon "are adversely impacted by aquatic cyanide" such that the potential effects of human activities in the Washington region "should be considered in accordance with section 7 [of the ESA]."  *Id.* ¶ 88 (citing Revision of Critical Habitat for the Southern Resident Killer Whale Distinct Population Segment, 86 Fed. Reg. at 41,683).

Plaintiff also argues that new information regarding the impacts of cyanide further justifies reinitiated consultations.  Namely, plaintiff cites the decreased populations of various fish species that "are at disproportionately greater risk of extinction than when EPA and the Services first began consultation on Washington State's cyanide water quality criteria."  *Id.* ¶ 98.[2]  Plaintiff also notes "new scientific information indicat[ing] that accelerating climate change impacts are also likely to amplify the toxicity of cyanide on fish" such that decades-old standards approved by EPA "may not be adequately protective today."  *Id.* ¶ 99.

## C.    Procedural Background

Plaintiff filed the instant complaint, on February 24, 2022, alleging that EPA "fail[ed] to ensure that [its] approvals of Washington State's limits on aquatic cyanide . . . in Washington's waters will not jeopardize the survival and recovery of endangered and threatened species or adversely modify habitat deemed essential to their survival and recovery," in violation of Section 7 of the ESA.  Compl. ¶¶ 1–2.  On May 17, 2022, the parties submitted a stipulation to stay litigation pending ongoing settlement discussions, *see* Stipulated Stay, ECF No. 13, which was granted, *see* Min. Order (May 17, 2022), and extended multiple times over the course of six

---

[2]    Those species include the Puget Sound chinook, the Lake Ozette sockeye, the Snake River spring/summer chinook, the Puget Sound steelhead, the Upper Columbia spring chinook, the Columbia River chum salmon, and the bull trout as well as the Southern Resident killer whale, which feeds on Chinook salmon and has similarly faced decline.  *See* Compl. ¶¶ 90–97.

months, *see* Min. Order (June 23, 2022) (extending stay); Min. Order (July 14, 2022) (same); Min. Order (Aug. 17, 2022) (same); Min. Order (Oct. 18, 2022) (same).

The parties then filed a Joint Status Report, on November 17, 2022, relating that settlement negotiations failed, and briefing should commence.  *See* Joint Status Report and Proposed Schedule ¶ 3, ECF No. 18.  Defendants subsequently filed the instant motion, *see generally* Defs.' Mot., which the parties fully briefed, *see generally* Pl.'s Opp'n; Defs.' Reply Supp. Mot. Dismiss ("Defs.' Reply"), ECF No. 23.  Plaintiff also filed a Notice of Supplemental Authority drawing the Court's attention to a recent decision holding in part that claims against FWS for failing to publish ESA-mandated "12-month findings" on whether to list certain species as endangered were not time-barred under 24 U.S.C. § 2401(a)'s six-year statute of limitations. *See* Pl.'s Notice of Supp. Authority, ECF No. 22; Memorandum Opinion, *Ctr. for Biological Diversity v. Haaland*, No. 20-cv-573 (EGS), 2023 WL 2401662 (D.D.C. Mar. 8, 2023), ECF No. 45.  The motion is now ripe for review.

## II.     LEGAL STANDARD

"Article III of the Constitution prescribes that '[f]ederal courts are courts of limited subject-matter jurisdiction' and 'ha[ve] the power to decide only those cases over which Congress grants jurisdiction.'"  *Bronner ex rel. Am. Stud. Ass'n v. Duggan*, 962 F.3d 596, 602 (D.C. Cir. 2020) (alterations in original) (quoting *Al-Zahrani v. Rodriguez*, 669 F.3d 315, 317 (D.C. Cir. 2012)); *see also Gunn v. Minton*, 568 U.S. 251, 256 (2013) ("'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994))). Absent subject-matter jurisdiction over a case, the court must dismiss it.  *See Arbaugh v. Y & H*

*Corp.*, 546 U.S. 500, 506–07 (2006) (citing *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)); Fᴇᴅ. R. Cɪᴠ. P. 12(h)(3).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "[a] plaintiff need not make 'detailed factual allegations,'" but the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *VoteVets Action Fund v. U.S. Dep't of Veterans Affs.*, 992 F.3d 1097, 1104 (D.C. Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A facially plausible claim pleads facts that are not "'merely consistent with' a defendant's liability" but that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)); *see also Keren Kayemeth Leisrael - Jewish Nat'l Fund v. Educ. for a Just Peace in the Middle East*, 66 F.4th 1007, 1013 (D.C. Cir. 2023).  Consequently, "[a] complaint survives a motion to dismiss even '[i]f there are two alternative explanations, one advanced by [the] defendant and the other advanced by [the] plaintiff, both of which are plausible.'" *VoteVets Action Fund*, 992 F.3d at 1104 (alterations in original) (quoting *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015)).

In deciding a motion under Rule 12(b)(6), the court must consider the whole complaint, accepting all factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555; *see also Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204, 210 (D.C. Cir. 2022).  Courts do not, however, "assume the truth of legal conclusions, . . . or accept inferences that are unsupported by the facts set out in the complaint." *Air Excursions LLC v. Yellen*, 66 F.4th 272, 277 (D.C. Cir. 2023) (citations omitted).[3]

---

[3]      Since this Circuit has recently held that the six-year statute of limitations on civil suits against the United States outlined in 28 U.S.C. § 2401(a) is nonjurisdictional, *see Jackson v. Modly*, 949 F.3d 763, 778 (D.C. Cir.

III.    DISCUSSION

Defendants' motion to dismiss each claim asserted is predicated on different bases, but none is persuasive, as explained below.

A.    Count I

Plaintiff first alleges that EPA has violated its "ongoing duty to ensure that its actions are not jeopardizing the continued existence of endangered and threatened species or resulting in the destruction or adverse modification of their designated critical habitat" by failing to complete Section 7 consultations with the Services regarding Washington's submitted water quality criteria for cyanide in 1993, 1998, and 2007, contrary to the ESA, and consequently the agency action is arbitrary, capricious, not in accordance with law, and unlawfully withheld or unreasonably delayed, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), (2)(A).  *See* Compl. ¶¶ 101–09 (Count I).  Defendants do not deny failing to consult with the Services.  *See* Defs.' Mot. at 4–5.  Rather, they counter that Count I is time-barred under the six-year statute of limitations applicable under 28 U.S.C. § 2401(a), and that EPA's failure to complete Section 7 consultations in 1993, 1998, and 2007 accrued upon the approvals of Washington's water quality criteria for the tolling purposes of that statute.  *See* Defs.' Mot. at 13.[4]  Defendants are mistaken.

Section 2401(a) provides a general statute of limitations in actions brought against the federal government when no express limitations period appears in the statute.  The provision establishes that "every civil action commenced against the United States shall be barred unless

_____

2020), defendants' motion to dismiss Counts I and II as time-barred under the six-year statute of limitations is analyzed pursuant to Federal Rule of Civil Procedure 12(b)(6) as failure to state a claim and not Rule 12(b)(1) for lack of subject-matter jurisdiction.

[4]    Defendants also argue that no statutory or equitable tolling applies to the six-year statute of limitations period, *see* Defs.' Mot. at 12–15, and since neither basis for tolling was asserted by plaintiff, this argument is deemed admitted by concession.

the complaint is filed within six years after the right of action first accrues."  28 U.S.C. §

2401(a).  The parties do not dispute that § 2401(a) applies to the ESA.  *See* Defs.' Mot. at 11;

Pl.'s Opp'n at 27–28.

Generally, the statute of limitations begins to run "when the factual and legal

prerequisites for filing suit are in place."  *Blanton v. Off. of the Comptroller of the Currency*, 909

F.3d 1162, 1171 (D.C. Cir. 2018).  This Circuit, however, has recognized exceptions to §

2401(a), including the "continuing violation doctrine"—a doctrine the Circuit acknowledges is

"intricate and somewhat confusing."  *Keohane v. United States*, 669 F.3d 325, 329 (D.C. Cir.

2012).  This doctrine tolls the statute of limitations period in two instances:  (1) "[the] conduct . .

. could not reasonably have been expected to be made the subject of a lawsuit when it first

occurred because its character as a violation did not become clear until it was repeated during the

limitations period[;]" and (2) "the text of the pertinent law imposes a continuing obligation to act

or refrain from acting," *Earle v. District of Columbia*, 707 F.3d 299, 306–307 (D.C. Cir. 2012)

(citations omitted); *see also AKM LLC v. Sec'y of Labor*, 675 F.3d 752, 763 (D.C. Cir. 2012)

(Garland, J., concurring) ("[W]here a regulation (or statute) imposes a continuing obligation to

act, a party can continue to violate it until that obligation is satisfied, and the statute of

limitations will not begin to run until it does.").  "Whether the obligation is continuing is a

question of statutory construction."  *Earle*, 707 F.3d at 307; *see also In re: Rail Freight Fuel

Surcharge Antitrust Litig. - MDL No. 1869*, 34 F.4th 1, 9 (D.C. Cir. 2022) (describing the

traditional tools of statutory construction starting with the text of the statute then considering the

statute's structure, purpose, and legislative history).  Given that the conduct at issue here—

failing to satisfy Section 7 consultation—reasonably could have been expected to be the subject

of a lawsuit during the limitations period, only the second application of the continuing violation

doctrine applies to the instant dispute, making the key question whether ESA's Section 7

imposes "a continuing obligation" on EPA "to act or refrain from acting."  *Earle*, 707 F.3d at

306–307.

> This analysis begins with the text of Section 7 of the ESA, which provides:

> Each Federal agency ***shall***, in consultation with and with the assistance of the Secretary, ***insure*** that ***any action authorized, funded, or carried out*** by such agency (hereinafter in this section referred to as an "agency action") ***is not likely to jeopardize the continued existence*** of any endangered species or threatened species or result in the destruction or adverse modification of habitat.

16 U.S.C. § 1536(a)(2) (emphasis added).  Plaintiff focuses on the function of "shall . . . insure"

in the statute, claiming that, "[l]ike a seller's promise to guarantee an item, the seller's obligation

does not lapse at the point of purchase; under section 7, the action agency's duty to insure against

jeopardy and adverse modification does not end at the point of initial approval."  Pl.'s Opp'n at

21; *Murphy v. Smith*, 138 S. Ct. 784, 787 (2018) ("[T]he word 'shall' usually creates a mandate,

not a liberty."); *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 667 (2007)

(defining "insure" as "to make certain, to secure, to guarantee (some thing, event, etc.)").

Plaintiff views the phrase "continued existence" to support that reading—that an action agency,

here EPA, must make certain that its conduct does not jeopardize the continued existence of any

protected species or habitat.  *See* Pl.'s Opp'n at 21.

> Plaintiff's reading is accurate.  According to the statute, the agency must make certain,

secure, or guarantee that its act of authorizing, funding, or carrying out "is not likely to

jeopardize the continued existence" of protected species and habitats.  16 U.S.C. § 1536(a)(2).

The present tense of "shall . . . insure" and "is not likely" imposes on the agency a current and

ongoing duty to consult when analyzing the impact of its actions, even those that occurred in the

past, as evidenced by the past tense adjectives "authorized, funded, or carried out" to describe the

agency's action.  *Id.*; *see also Ctr. for Biological Diversity v. Ross*, 349 F. Supp. 3d 38, 42

(D.D.C. 2018) ("Under § 7 [of the ESA], the agency has an ongoing duty to avoid jeopardy that continues regardless of the status of consultation, so long as the agency retains discretionary control over the action.").

The purpose and implementation of the ESA supports this reading.  The Supreme Court has described the ESA as "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation" and a tool to conserve endangered and threatened species and the ecosystems upon which they depend.  *Tenn. Valley Auth.*, 437 U.S. at 180; *see also* 16 U.S.C. § 1531(b) (1976 ed.) (outlining the purpose of the ESA).  Congress intended that federal agencies would continuously protect endangered and threatened wildlife by analyzing actions *ab initio* and revisiting those actions with that conservation goal in mind.  16 U.S.C. § 1531(b).  The Services understood that mandate when implementing 50 C.F.R. § 402.16 to require reinitiation of consultation on all agency actions when new information comes to light or new critical species or habitats are designated.  *Cf. Cottonwood Env'l L. Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1087 (9th Cir. 2015) (holding that FWS was required to reinitiate consultation given new information, in compliance with 50 C.F.R. § 402.16, even though the underlying agency action was complete because of "the ESA's statutory command that agencies consult to ensure the '*continued* existence' of listed species" (emphasis in original)).  Permitting an agency like EPA to fail to comply with a statutory mandate to "insure" the continued existence of protected species and habitats through consultation and then simply run out the clock on the statute of limitations to challenge its inaction undermines that stated purpose.

The parties invoke a litany of authority—both in and out of the D.C. Circuit—to support their divergent readings of Section 7.  This cited authority, as well as the Court's own review, is that the D.C. Circuit has yet to interpret Section 7's duty to consult relative to the continuing

violation doctrine in the statute of limitations sphere.  The most persuasive authority on each side is thus addressed below.

Plaintiff relies on various cases that, in its view, highlight Section 7's ongoing duty to consult.  In those cases, application of the continuing violation doctrine was found to be supported in statutes that featured an explicit deadline by when the agency must perform some action and the agency failed to act at all in complete disregard to that deadline.  *See Ctr. for Biological Diversity v. Haaland*, No. 20-cv-573 (EGS), 2023 WL 2401662, at *7–10 (D.D.C. Mar. 8, 2023) (holding plaintiff's claim that EPA failed to make certain findings within 12 months as required by 16 U.S.C. § 1533(b)(3)(B), not to be time-barred by 28 U.S.C. § 2401(a), because the continuing violation doctrine applied and the text of the relevant provision created compelled agency action not yet completed); *Ctr. for Biological Diversity v. Bernhardt*, 480 F. Supp. 3d 69, 77–79 (D.D.C. 2020) (holding that the continuing violation doctrine applied to render plaintiff's claim—that FWS failed to provide a "recovery plan" to insure the continued protection of the Houston toad, in violation of 16 U.S.C. §1533(f)(1)(B)—as timely since FWS had yet to comply with the statute); *see also The Wilderness Soc'y v. Norton*, 434 F.3d 584, 589 (D.C. Cir. 2006) (discussing, in dicta, that dismissal of plaintiff's claim as time-barred under § 2401(a) was "unlikely" because "[plaintiff's] complaint alleges continuing violations by the Government . . . [and] 'does not complain about what the agency has done but rather about what the agency has yet to do'" (citing *In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999))); *In re Bluewater Network*, 234 F.3d 1305, 1312–14 (D.C. Cir. 2000) (finding that plaintiff's mandamus claim challenging agency's failure to comply with statute mandating certain action was timely).  The fact that Section 7 lacks an explicit deadline is of no matter—this statutory provision similarly imposes on EPA a mandate to insure continued

existence via consultation.  By arguing that defendants fail still to consult on its approvals of

Washington's cyanide criteria, plaintiff challenges agency action yet to come, not action that has

already occurred.  Section 7 of the ESA permits such a claim.

Defendants point to *Northwest Environmental Advocates v. EPA* ("*NWEA*"), No. C14-

196, 2015 WL 13938171 (W.D. Wash. July 2, 2015), in which the Western District of

Washington dismissed plaintiff's claims that EPA violated the ESA, APA, and CWA by failing

to perform Section 7 consultations before approving Washington's water quality standards

pursuant to the CWA.  *See id.* at *3, 8.  Yet the reasoning in that case is carefully tied to the

claims and arguments asserted before it, and actually undercuts defendants' position here.  The

*NWEA* court reasoned that this Section 7 claim was time-barred, under 28 U.S.C. § 2401(a), and

that the "continuing duty doctrine" did not apply because the dispute concerned a "discrete

agency action" and not continued "agency *failures* to act."  *Id.* at *7 (emphasis in original).  The

court explained that "[w]here an agency fails to act in violation of a statutory duty, a plaintiff

may well have a cause of action to compel the unduly delayed agency action," but that the

plaintiff instead asserted "that the EPA affirmatively took action in, through the exercise of its

discretion, approving specific State water quality standard submissions" without consulting.  *Id.*

Plaintiff's claim here is the exact type alleging "agency *failures* to act" and, although not brought

specifically as a mandamus action, along with alleging a violation of Section 7 of the ESA,

plaintiff asserts a violation under the APA because defendants "unlawfully withheld or

unreasonably delayed" fulfilling their consultation duties.  *See* 5 U.S.C. § 706(1), (2)(A).  Such

allegations suffice at the motion to dismiss stage.

Consequently, since the text of Section 7 of the ESA imposes an ongoing obligation to consult on agency actions that may jeopardize protected species and habitats, Count I is timely and defendants' motion to dismiss this claim is denied.

**B.      Count II**

Plaintiff next argues that EPA's public withdrawal in 2016 from its attempted national consultation scheme, under the CWA, similarly breached its Section 7 responsibilities and was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and constitutes "agency action unlawfully withheld or unreasonably delayed" pursuant to the APA, 5 U.S.C. § 706(1), (2)(A).  *See* Compl. ¶¶ 115–19 (Count II).  Defendants initially oppose Count II in tandem with Count I, arguing that both claims are barred by the six-year statute of limitations. *See* Defs.' Mot. at 10–17.  After plaintiff clarified that the agency action targeted occurred on May 4, 2016, and thus within § 2401(a)'s six-year limitations period since the complaint was filed on February 24, 2022, defendants shifted their statute of limitations challenge to instead assert that EPA's choice to withdraw from national cyanide consultations in 2016 was not agency action.  *See* Defs.' Reply at 12–14.  Defendants are incorrect.

To constitute final agency action requires, first, that "the action must mark the 'consummation' of the agency's decisionmaking process" and is not "of a merely tentative or interlocutory nature."  *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citing *Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948)).  Second, "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'"  *Id.* at 178 (quoting *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)); *see also Sierra Club v. EPA*, 955 F.3d 56, 61 (D.C. Cir. 2020) (referring to the Supreme Court's affirmance of *Bennett*'s two-prong finality test in *U.S. Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590 (2016)).

Since defendants neglected to assert this argument until reply, plaintiff had no occasion to address it.  Nonetheless, the conclusion is clear and needs no further briefing:  EPA's decision to terminate its national cyanide consultation in May 2016 constituted a final agency action.  The choice was the consummation of EPA's decisionmaking process.  By defendants' own description, EPA reached this conclusion to cease cyanide consultations "after concluding that this approach was neither efficient nor productive to consult on the approval of all new and revised state water quality standards through the mechanism of a single consultation."  Defs.' Mot. at 5.  Defendants proceed to explain EPA's reasoning that "all the effects on listed species and critical habitat would be analyzed and better understood with more site-specific data on a state-by-state/regional basis versus a single national consultation."  *Id.*  That decision was not interlocutory nor tentative—upon this pronouncement, EPA ceased consultations on the impacts of cyanide, which, relevant to the second requirement for finality, exposed EPA to legal consequences of failing to comply with Section 7's consultation requirement.

As such, plaintiff's claim that EPA's public withdrawal in 2016 from its attempted national consultation scheme violated ESA's Section 7 and the APA is timely, and EPA's withdrawal constitutes final agency action.  Defendants' motion to dismiss Count II thus fails.

### C.    Counts III and IV

Plaintiff's third and fourth claims allege that EPA failed to reinitiate Section 7 consultations with the Services, in violation of both the ESA and the EPA, after EPA's designation and revision of critical habitat potentially affected by Washington's cyanide criteria, *see* Compl. ¶¶ 120–124 (Count III), and the emergence of new information regarding the impact of the cyanide criteria on Washington's protected species and habitats, *see id.* ¶¶ 125–131 (Count IV).  Plaintiff believes each of these claimed events is sufficient to require reinitiation of Section 7 consultations pursuant to 50 C.F.R. § 402.16(a)(2), as "new information reveals effects of the

action that may affect listed species or critical habitat in a manner or to an extent not previously considered," and 50 C.F.R. § 402.16(a)(4), as "a new species is listed or critical habitat designated that may be affected by the identified action." *See* Compl. ¶¶ 42, 86–99.  Defendants counter that "[t]here is no claim for failing to reinitiate a consultation(s) that was never completed and did not result in a biological opinion or letter of concurrence," Defs.' Mot. at 17–18 (citing *Conservation Cong. v. U.S. Forest Serv.*, No. 16-cv-864, 2018 WL 2427640, at *12 (E.D. Cal. May 30, 2018)), and, further, that because the Services are not required to request initiation, they cannot be required to do so here.  *See id.* at 18–19.  The plain text of 50 C.F.R. § 402.16(a) renders both defensive contentions untenable.

The traditional rules of statutory interpretation likewise apply to interpreting an agency rule or regulation.  *See Stand Up for California! v. U.S. Dep't of the Interior*, 994 F.3d 616, 624 (D.C. Cir. 2021) ("As with statutes, we may look to the purpose and drafting history of the regulation to confirm whether our interpretation of the text comports with the Department's intent in promulgating [the regulation]."). In interpreting a regulation, a court begins with the text before turning to "other canons of interpretation."  *Kisor v. Wilkie*, 139 S. Ct. 2400, 2446 (2019) (Gorsuch, J., concurring) (quoting *Green v. Brennan*, 578 U.S. 547, 553–54 (2016)).

The text of 50 C.F.R. § 402.16(a) unequivocally states that reinitiation of consultation "***is required and shall be requested*** . . . where discretionary Federal involvement or control over the action has been retained or is authorized by law ***and***" any one of four conditions is present.  50 C.F.R. § 402.16(a) (emphasis added).  The regulation leaves no room for discretion—reinitiation is mandatory when certain situations arise.  *See Shall*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("Has a duty to; more broadly, is required to . . . .  This is the mandatory sense that drafters typically intend and that courts typically uphold."); *Require*, MERRIAM-WEBSTER UNABRIDGED

DICTIONARY, https://unabridged.merriam-webster.com/unabridged/require

[https://perma.cc/7U97-55RM] (last visited July 7, 2023) ("to ask for authoritatively or

imperatively").  The two conditions that plaintiff argues apply to the instant dispute state that

consultation is required "[i]f new information reveals effects of the action that may affect listed

species or critical habitat in a manner or to an extent not previously considered," *id.* §

402.16(a)(2), and "[i]f a new species is listed or critical habitat designated that may be affected

by the identified action," *id.* § 402.16(a)(4).  Neither requirement mentions a prerequisite of a

completed prior consultation.  In fact, the reinitiation trigger for new information defines "new"

as information "not previously considered," without any qualifying language along the lines

defendants suggest should be superimposed that the "new information" must have been

considered in a final biological opinion, incidental take statement, or other finalized consultation.

No such absent qualifiers can be conjured from the regulation's plain text.  *See Lomax v. Ortiz-*

*Marquez*, 140 S. Ct. 1721, 1725 (2020) (courts "may not narrow a provision's reach by inserting

words Congress chose to omit").

     The construction of the provision in its entirety also supports its plain meaning.  The

other two conditions that trigger reinitiation expressly state that they follow an incidental take

statement, *see* 50 C.F.R. § 402.16(a)(1) ("Reinitiation of consultation is required . . . [i]f the

amount or extent of taking specified in the incidental take statement is exceeded."), or a

biological opinion or written concurrence, *see id.* § 402.16(a)(3) ("Reinitiation of consultation is

required . . . [i]f the identified action is subsequently modified in a manner that causes an effect

to the listed species or critical habitat that was not considered in the biological opinion or written

concurrence.").  If the Services intended for the conditions in (a)(2) and (a)(4) to apply only to

completed consultations that resulted in incidental take statements, biological opinions, or

written concurrences, they would have included the same language contained in (a)(1) and (a)(3), but the absence of such an indication in the text leads to the opposite conclusion—that (a)(2) and (a)(4) intentionally apply to scenarios requiring reinitiation regardless of whether a prior consultation was completed. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1626 (2018) ("[W]hen Congress wants to mandate [certain] procedures it knows exactly how to do so.").

The plain text also imposes a duty to request reinitiation on both the action agency *and* the Services. The rule states that reinitiation of consultation "is required and shall be requested by the Federal agency *or* by the Service." 50 C.F.R. § 402.16(a) (emphasis added). Defendants concede that the text mandates the Services to act when a reinitiation condition arises. *See* Defs.' Reply at 18 ("the reinitiation regulation states that reinitiation shall be ***requested*** by the action agency or the Services when one of the triggers is met" (emphasis added)). In this Circuit, § 402.16(a) has been read as imposing a duty to request reinitiation on the Services. *See, e.g.*, *Me. Lobstermen's Ass'n v. Nat'l Marine Fisheries Serv.*, 70 F.4th 582, 588 (D.C. Cir. 2023) ("In light of the new study and the elevated number of right whale deaths, the Service reinitiated a formal consultation under § 7 of the ESA for fisheries that may harm the right whale, including the lobster fishery. *See* 50 C.F.R. § 402.16(a)(1)–(2)."); *Oceana, Inc. v. Ross*, No. 15-cv-0555 (PLF), 2020 WL 5995125, *4 (D.D.C. Oct. 9, 2020) ("The action agency and consulting agency are 'required' to reinitiate Section 7 consultation 'immediately' if the amount or extent of taking specified in the Incidental Take Statement is exceeded. 50 C.F.R. §§ 402.14(i)(4), 402.16(a)."); *Mayo v. Jarvis*, 177 F. Supp. 3d 91, 132 (D.D.C. 2016) ("The ESA's implementing regulations require federal agencies or the FWS to reinitiate formal consultation regarding an agency action's effects on an endangered or threatened species in several situations."); *see also U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 789 (2021) (Breyer, J., dissenting) (describing

50 C.F.R. § 402.16 as "requiring the Services to reinitiate consultation in specified circumstances").[5]  While the Services' eventual request for reinitiation may not bind the action agency to in fact reinitiate consultation, the regulation requires the Services to make such a request nonetheless when any one of the conditions in § 402.16(a) is met.  The action agency may not comply with that request—and may face liability for such a decision—but that question goes beyond the scope of this dispute.  All the regulation requires is that the Services "shall request" reinitiation, and that is what the Services are bound to do.

According to that regulation's clear text, plaintiff has provided sufficient facts to state claims upon which relief can be granted.  Regarding Count III, on February 24, 2016, NMFS designated critical habitat for both the Lower Columbia River coho salmon and the Puget Sound steelhead that includes waters covered by Washington's water quality criteria.  *See* Compl. ¶ 86; *see also* 81 Fed. Reg. 9252 (Feb. 24, 2016) (*codified* at 50 C.F.R. § 226.212).  NMFS also revised the critical habitat designation of Southern Resident killer whales on August 2, 2021, a designation that includes waters covered by Washington's water quality regime.  *See* Compl. ¶ 87; *see also* 86 Fed. Reg. 41,668, 41,679–80 (Aug. 2, 2021).  This too satisfies the critical habitat designation condition of 50 C.F.R. § 402.16(a).  These instances fall neatly into the category of "new . . . critical habitat designated" in 50 C.F.R. § 402.16(a)(4) since EPA's approval of the Washington's cyanide criteria.

Regarding Count IV, plaintiff offers numerous factual claims about the declining populations of specific species in Washington since EPA approved the state's water criteria and

---

[5]      This in-Circuit authority trumps defendants' reliance on *Conservation Congress v. U.S. Forest Service*, No. 16-cv-864, 2018 WL 2427640 (E.D. Cal. May 30, 2018).  In any event, *Conservation Congress* addressed a situation in which no consultation occurred at all because the Services reached a conclusion that the agency action had "no effect" on the protected species.  *See id.* at *12.  Here, consultation was initiated three times regarding Washington's cyanide criteria and was simply abandoned thereafter.  That key factual distinction removes this case from the ambit of *Conservation Congress*.

about the potential impact on cyanide toxicity due to climate change.  *See* Compl. ¶¶ 98–99.

These facts must be treated as true at this stage of litigation.  *See Tyler v. Hennepin Cty., Minn.*,

143 S. Ct. 1369, 1374 (2023) ("This case comes to us on a motion to dismiss for failure to state a

claim.  At this initial stage, we take the facts in the complaint as true.").  Further, when presumed

true, these instances fall into the category of "new information [that] reveals effects of the action

that may affect listed species or critical habitat in a manner or to an extent not previously

considered" in any way by EPA or the Services, whether in complete or incomplete consultations

as described in 50 C.F.R. § 402.16(a)(2), which requires reinitiation.

   Defendants' invocation of the preamble of a recent change to the ESA regulations to

support their reading of the provision is unavailing.  *See* Defs.' Mot. at 18 & n.5.  In explaining

changes to § 402.16(a), the preamble states:

> The reference to the Service in this language does not impose an affirmative
> obligation on the Service to reinitiate consultation if any of the criteria have been
> met.  Rather, the reference here has always been interpreted by the Services to allow
> us to recommend reinitiation of consultation to the relevant Federal action agency
> if we have information that indicates reinitiation is warranted.  It is ultimately the
> responsibility of the Federal action agency to reinitiate consultation with the
> relevant Service when warranted.  The same holds true for initiation of consultation
> in the first instance.  While the Services may recommend consultation, it is the
> Federal agency that must request initiation of consultation.  *See* 50 C.F.R. §
> 402.14(a).

Endangered and Threatened Wildlife and Plants; Reguls. for Interagency Coop., 84 Fed. Reg.

44,976, 44,980 (Aug. 27, 2019).  Contrary to defendants' position, however, the preamble of a

regulation is not an operative part of the rule and thus does not overcome the plain and clear

meaning of the rule's text.  *See Nat'l Wildlife Fed'n v. EPA*, 286 F.3d 554, 569 (D.C. Cir. 2002)

("The preamble to a rule is not more binding than a preamble to a statute."); *Rothe Dev., Inc. v.*

*U.S. Dep't of Def.*, 836 F.3d 57, 66 (D.C. Cir. 2016) ("Findings, like a preamble, may contribute

to 'a general understanding of a statute,' but, unlike the provisions that confer and define agency

powers, they 'are not an operative part of the statute.'" (quoting *Ass'n of Am. R.Rs. v. Costle*, 562 F.2d 1310, 1316 (D.C. Cir. 1977))); *SW Gen., Inc. v. NLRB*, 796 F.3d 67, 75 (D.C. Cir. 2015) ("Where the preamble and the operative portion of the statute may reasonably be read consistently with each other, the preamble may not properly support a reading of the operative portion which would plainly be at odds with what otherwise would be its clear meaning." (citation omitted)).  That said, if anything, the rule's preamble only promotes confusion to defendants' position in that, despite seeking to clarify the meaning of § 402.16(a) in the preamble, the Services forewent the opportunity to delete the phrase in the provision requiring the Services to request reinitiation—putting the preamble in clear contradiction with the plain text of the regulation.  As such, defendants' attempt to use the rule's preamble to bolster its position here is ineffective.[6]

Consequently, plaintiff pleads sufficient facts to assert that defendants violated 50 C.F.R. § 402.16(a) and thus defendants' motion to dismiss Counts III and IV fails.[7]

---

[6]     The same is true of defendants' citation to another section of the preamble as well as to the Services' Consultation Handbook to support the position that the requirements of § 402.16(a) only apply to completed consultations.  *See* Defs.' Reply at 16 (citing 84 Fed. Reg. 44,976, 45,009–10 and U.S. FISH & WILDLIFE SERV., NAT'L MARINE FISHERIES SERV., ENDANGERED SPECIES CONSULTATION HANDBOOK 4-64, 4-65 (1998) https://www.fws.gov/sites/default/files/documents/endangered-species-consultation-handbook.pdf [https://perma.cc/Y6XX-VERP]).  Neither extrinsic explanation overcomes the plain text of § 402.16(a).

[7]     Plaintiff posits that EPA maintains discretionary involvement or control over its water quality standard approvals in satisfaction of the first requirement in 50 C.F.R. § 402.16(a), which requires reinitiation of consultation "where discretionary Federal involvement or control over the action has been retained or is authorized by law."  Pl.'s Opp'n at 32–33.  Defendants did not seek to dismiss the complaint on this ground and addressed this position for the first time in reply, *see* Defs.' Reply at 17–18—and so the argument is waived.  *See Ramer v. United States*, 620 F. Supp. 2d 90, 102 (D.D.C. 2009) ("Here, the defendant did not raise the defense of insufficient service of process in its motion to dismiss but waited to raise the issue for the first time in its reply. . . .  Therefore, this Court must deny the defendant's motion to dismiss for lack of personal jurisdiction because the defendant has waived its right to move to dismiss the complaint on such grounds."); *Nattah v. Bush*, 770 F. Supp. 2d 193, 200–01 (D.D.C. 2011) ("Rule 12 of the Federal Rules of Civil Procedure provides that 'a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.'" (citing FED. R. CIV. P. 12(g)(2))).

## IV.     CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is denied.  An Order consistent with this Memorandum Opinion will be entered contemporaneously.

Date:  August 8, 2023

_____
**BERYL A. HOWELL**
United States District Judge